J-A04020-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE: THE ESTATE OF HAROLD DIEHL

APPEAL OF: MARJORIE DIEHL-
ARMSTRONG

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 911 WDA 2014

Appeal from the Order Dated May 6, 2014
In the Court of Common Pleas of Erie County
Orphans' Court at No(s): 2014-00054

BEFORE: BOWES, OLSON AND STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED FEBRUARY 27, 2015**

Appellant, Marjorie Diehl-Armstrong, appeals from the order entered on May 6, 2014, which denied Appellant's Petition to Revoke Letters Testamentary and for Probate of Will. We affirm.

The Orphans' Court thoroughly and ably summarized the underlying facts of this case. As the Orphans' Court explained:

> Harold Diehl [(hereinafter "Decedent")] died on January 8, 2014 [and was] survived by one child, [Appellant].
>
> On February 13, 2014, George and Mary Jane Brabender filed a Petition for Probate and Grant of Letters offering for probate a December 9, 2005 Last Will and Testament of [Decedent]. By a February 13, 2014 Decree of the Register, Letters Testamentary were granted to George and Mary Jane Brabender and the December 9, 2005 Last Will and Testament was admitted to probate and filed of record as [Decedent's] Last Will.
>
> On March 10, 2014, [Appellant] filed her Petition to Revoke[,] requesting that the [Orphans'] Court revoke the letters testamentary granted to the Brabenders.

*Retired Senior Judge assigned to the Superior Court.

[Appellant's] Petition further requested probate of a February 4, 2008 instrument attached to the Petition to Revoke as [Decedent's] last will and testament and to issue letters testamentary to [Attorney] Lawrence A. D'Ambrosio.

The Estate of Harold Diehl, on May 1, 2014, filed an Answer and New Matter to the Petition to Revoke [and alleged] that the February 4, 2008 instrument was invalid. Specifically, the executors alleged that the [Decedent] was not of sound mind when he signed the February 4, 2008 instrument and that he was the victim of fraud perpetrated by [Appellant,] who previously plotted to murder him, and Lawrence A. D'Ambrosio, [who was Appellant's] attorney.[fn.1] . . .

> [fn.1] In 2010, [Appellant] was convicted on charges of armed bank robbery, conspiracy[,] and using a destruction device in a crime of violence for her role in the infamous "Pizza Bomber" case – the bank robbery that killed Brian Wells. . . . [*See*] United States District Court for the Western District of Pennsylvania Docket No. 1-07-CR-00026-001. The [United States] Court of Appeals for the Third Circuit posited [that Appellant was] concerned that her father[, Decedent,] was squandering her inheritance [and that she] hatched the bank robbery plot in an attempt to obtain the funds to have [Decedent] killed. ***See United States v. Diehl-Armstrong***, 504 F. App'x 152, 153-154 (3rd Cir. 2012), *cert. denied*, 133 S.Ct. 958 (U.S. 2013).

[On May 6, 2014, the Orphans' Court held a hearing on Appellant's Petition to Revoke. As the Orphans' Court explained, from the evidence that was presented during the May 6, 2014 hearing, it arrived at the following well-supported factual conclusions:]

. . .

Attorney Lawrence A. D'Ambrosio and [Appellant] have a long-standing relationship, including that of attorney-client. Attorney D'Ambrosio has known [Appellant] since the early [1970s]. [Attorney D'Ambrosio] has served as [Appellant's] counsel over the years, including in 2000 when he represented her in a civil matter in which she attempted to remove [Decedent], her own father, as the administrator of

his wife's [(Appellant's mother's)] estate. In the 2000 proceeding against [Decedent], Attorney D'Ambrosio alleged on [Appellant's] behalf that [Decedent] had many medical problems, including symptoms of obstinacy and impairment of judgment and that it [would] be advisable to have a guardian appointed to protect him from designing persons. This action by [Appellant] was very upsetting to [Decedent] and the two became estranged. Decedent expressed concerns to friends that [Appellant] wanted his estate, which he did not want to happen.

Accordingly, on November 9, 2000, [Decedent] executed a holographic will leaving the bulk of his estate to charity and [to] individuals other than [Appellant]. The bequests included $100,000[.00] to Shriners Hospital, $300,000[.00] to Edinboro University, $100,000[.00] to his sister-in-law, Mabel Diehl, $350,000[.00] in bonds to his neighbors, the Kendrath family, a $75,000[.00] bond to neighbor Pearl Owsiejko, a $75,000[.00] bond to neighbors, a $100,000[.00] bond to Phyllis Zack, a $40,000[.00] bond to Jack Martin of Dusckas Funeral Home, a $65,000[.00] bond to the Kay Sutton family[,] and a $100,000[.00] bond to Susan Miller. The 2000 Will left only a $100,000[.00] bond to [Appellant]. The Will named Dorothy Kendrath as executor.

Thereafter, [Decedent] began giving away money. He gave "$5,000[.00] checks to almost everybody and anybody." He also delivered $100,000[.00] and $50,000[.00] bonds to people. During this process, [Decedent] gifted a total of nearly [$1,000,000.00] to different individuals, primarily those named in the 2000 Will.

On December 9, 2005, [Decedent] executed a Last Will and Testament prepared by Attorney Sumner Nichols. Consistent with the 2000 Will, the 2005 Will left only a minimal amount to [Appellant] while the bulk of the estate was to be distributed to [Decedent's] friends. Specifically, the 2005 Will left to [Appellant], who was incarcerated at [the State Correctional Institute – Muncy], only $2,000[.00]. Pursuant to the 2005 Will, Pearl Owsiejko was to receive $5,000[.00], John and Beverly Ott were to receive $5,000[.00], and Jack Martin $2,000[.00]. Decedent further left all of the possessions within his

residence to George and Mary Jane Brabender. The residuary estate was to go 25% to George and Mary Jane Brabender, 25% to Susan Miller, 20% to Dorothy Kendrath, 10% to Mabel Diehl[,] and 20% to Sharon Easton. Finally, the Will appointed George and Mary Jane Brabender as co-executors.

During 2006 and 2007, Attorney D'Ambrosio continued his representation of [Appellant] through civil proceedings attempting to recover some of her property. Around the same time, Attorney D'Ambrosio began visiting [Decedent] at his residence in attempts to reconcile him with [Appellant]. The two were estranged regarding the battle [over Decedent's] wife's estate as well as [over] the well-known allegations that [Appellant] engaged in criminal activity in an attempt to raise money to have [Decedent] killed. Decedent was aware that the alleged motive in the Pizza Bomber case was for [Appellant] to raise money toward the $250,000[.00] contract for [Decedent's] murder. With regard to [Appellant], [Decedent] declared: "If she needed money she wouldn't ask me; she would kill me first." Attorney D'Ambrosio told [Decedent] that the statements regarding [Appellant's] murder plot against him were simply untrue statements made by accomplices. Attorney D'Ambrosio's visits occurred every couple of months with reports back to [Appellant, whom] he visited monthly, on the progress.

During 2007 and 2008, the Brabenders were increasingly assisting [Decedent] with his needs, including grocery shopping, taking him to health care appointments, helping him pay his bills, etc. In 2008, [Decedent] did not even know what he was signing when neighbors assisted him by writing out the checks for him to pay his bills. On May 5, 2008, George Brabender informed [Decedent's] health care provider of his concern that [Decedent] needed 24-hour surveillance. Mr. Brabender noted that [Decedent] had memories of events occurring in [the] distant history of his life, but [that he was not] clear on present events. Mr. Brabender further observed [Decedent] forgetting to turn off pots of water and finding them charred on the stove.

Attorney D'Ambrosio testified that [Decedent] contacted him in January [] 2008 to come to his home and prepare a

will for him. According to Attorney D'Ambrosio, [Decedent] wanted to assure [Appellant] that she would have a place to live once she was released from incarceration. The intent of the will was simply to solely leave [Decedent's] residence, a very modest home, to [Appellant]. . . .

[The resulting] February 4, 2008 instrument was signed by [Decedent] at his home when Attorney D'Ambrosio, [Attorney D'Ambrosio's] paralegal/secretary Loretta Susan Balog, and Charles Black, who is a client of [Attorney] D'Ambrosio's, went to [Decedent's] home. Attorney D'Ambrosio testified that [Decedent] showed no signs of mental incapacity at the time that he signed the February 4, 2008 will. Attorney D'Ambrosio reported to [Appellant] that [Decedent] had signed such a will. Attorney D'Ambrosio did not charge [Decedent] any fee for the preparation of the will. [Decedent] never mentioned to the Brabenders, who were his good friends, that Attorney D'Ambrosio revised his Will or that Attorney D'Ambrosio was his attorney.

Orphans' Court Opinion, 8/1/14, at 1-6 (internal citations omitted).

On May 6, 2014, the Orphans' Court entered an order denying Appellant's Petition to Revoke Letters Testamentary and for Probate of the February 4, 2008 will. After Appellant filed a timely notice of appeal from the Orphans' Court's May 6, 2014 order, the Orphans' Court ordered Appellant to file a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Appellant complied and raised the following claims in her Rule 1925(b) statement:

1. Whether proponents of an earlier will met their burden of proving that [Decedent] was incompetent at the time he executed his final will on February 4, 2008[?]

2. Whether proponents of an earlier will met their burden of proving that the will executed by [Decedent] on February 4, 2008 was not a valid will under the law of Pennsylvania[?]

3. Whether the [Orphans'] Court should have excluded evidence of a prior dispute in 2000 between [Decedent] and [Appellant] in ruling on the validity of a 2008 will in which [Appellant] was the sole beneficiary[?]

Appellant's Rule 1925(b) Statement, 6/19/14, at 1 (some internal capitalization omitted).

Appellant now raises the following claim to this Court:

Whether the [Orphans'] Court made an error of fact when it found that a 2000 will left "next to nothing" when it had left [Appellant] a $100,000.00 bond, and this error led it to invalidate the 2008 will[?]

Appellant's Brief at 4.

On appeal, Appellant's claim is that the Orphans' Court "made an error of fact" in its Rule 1925(a) opinion. Appellant did not raise this claim in her court-ordered Rule 1925(b) statement. Instead, Appellant's Rule 1925(b) statement simply claimed: 1) that the "proponents of [the] earlier will" failed to meet their "burden of proving that [Decedent] was incompetent at the time he executed his final will on February 4, 2008;" 2) that the "proponents of [the] earlier will" failed to meet their "burden of proving that the will executed by [Decedent] on February 4, 2008 was not a valid will;" and, 3) that the Orphans' Court committed an evidentiary error during the hearing. Appellant's Rule 1925(b) Statement, 6/19/14, at 1 (some internal capitalization omitted). Therefore, since Appellant failed to raise the current claim in her court-ordered Rule 1925(b) statement, the claim is waived on appeal. Pa.R.A.P. 1925(b)(4)(vii) ("[i]ssues not included in the [Rule

1925(b) s]tatement . . . are waived"); ***Commonwealth v. Castillo***, 888 A.2d 775 (Pa. 2005) (in order to preserve their claims for appellate review, appellants must comply whenever the trial court orders them to file a [Rule 1925(b) statement]. Any issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived") (internal quotations and citations omitted); ***see also In re Estate of Boyle***, 77 A.3d 674 (Pa. Super. 2013) (same).[1]

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/27/2015

_____

[1] Moreover, even if Appellant's issue on appeal were not waived, it would be meritless for the reasons set forth in the trial court's thorough and cogent opinion. ***See*** Trial Court Opinion, 8/1/14.